# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

LINDA GAIL GUNNOE,                    )
                **Plaintiff,**        )
                        )
**v.**                                )        **CIVIL ACTION NO. 2:15-12145**
                        )
**CAROLYN. W. COLVIN,**               )
**Acting Commissioner of Social Security,** )
               **Defendant.**      )

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Orders entered August 18, 2015, and January 5, 2016 (Document Nos. 4 and 14.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 11 and 12.), and Plaintiff's Reply. (Document No. 13.)

The Plaintiff, Linda Gail Gunnoe (hereinafter referred to as "Claimant"), filed an application for DIB on April 10, 2012 (protective filing date), alleging disability as of January 1, 2009, due to diabetes, asthma, hypertension, thyroid, carpal tunnel, and cholesterol.[1] (Tr. at 13, 153, 157-58, 167, 171.) The claim was denied initially and upon reconsideration. (Tr. at 13, 78-83, 84, 85-91, 92, 93-95, 101-03, 105-07.) On October 25, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 13, 108-09.) A hearing was held on February

---

[1] On her form Disability Report – Appeal, dated October 31, 2012, Claimant alleged that her diabetes was uncontrolled and that her carpal tunnel syndrome had worsened. (Tr. at 13, 209.)

7, 2014, before the Honorable Jack Penca. (Tr. at 13, 32-77.) By decision dated March 7, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-20.) The ALJ's decision became the final decision of the Commissioner on July 6, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-7.) Claimant filed the present action seeking judicial review of the administrative decision on August 13, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the

2

Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, January 1, 2009, through her date last insured, December 31, 2011. (Tr. at 15, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from asthma, which was a severe impairment. (Tr. at 15, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> [C]laimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she should not climb ladders, ropes, or scaffolds more than occasionally, and she should avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, dust, odors, gases, poor ventilation and work hazards such as moving machinery and unprotected heights.

(Tr. at 17, Finding No. 5.) At step four, the ALJ found that Claimant was able to perform her past relevant work as a department manager. (Tr. at 19, Finding No. 6.) On this basis, benefits were denied. (Tr. at 19, Finding No. 7.)

<u>Scope of Review</u>

The sole issue before this Court is whether the final decision of the Commissioner denying

3

the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on May 25, 1953, and was 60 years old at the time of the administrative hearing on February 7, 2014. (Tr. at 37, 157.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 170, 172.) In the past, she worked as a department manager. (Tr. at 72-73, 172, 178-86.)

<u>The Medical Record</u>

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

On January 24, 2008, Claimant's A1C was 12.1 (Tr. at 229.) Lab test results further indicated that Claimant eventually would need cholesterol medication. (Tr. at 230.)

4

Claimant was first treated by Dr. Thomas Lewis, M.D., on January 14, 2008. (Tr. at 231, 250-51.) Dr. Lewis noted that Claimant had lost 37 pounds and was advised by her prior physician that she was in the early stages of diabetes, with blood sugar levels in excess of 200. (Tr. at 250.) Claimant also reported asthma, headaches, restless legs at night, and some chest pressure during the holidays. (Id.) An echocardiogram was normal, as was her physical exam. (Tr. at 231, 250.) Dr. Lewis diagnosed chest pain, accelerated hypertension, diabetes mellitus, hypercholesterolemia, asthma, GERD, restless leg syndrome, and intentional weight loss. (Id.) An exercise stress test on February 14, 2008, was normal. (Tr. at 236-38.) Dr. Lewis prescribed Monopril, a Mirapex starter pack, and Metformin, pending labs. (Tr. at 231, 251.) On January 25, 2008, Dr. Lewis prescribed Synthroid for hypothyroidism and Janumet for diabetes. (Tr. at 233, 248-49.)

At a follow-up appointment on February 14, 2008, Claimant reported that she felt much better, with lowered blood sugar levels between 150 and 160 and no side effects from her medications. (Tr. at 239, 246.) She remained fatigued, but denied chest pain or shortness of breath. (Id.) On March 17, 2008, Claimant reported increased blood sugar levels in the 200 range and denied any other symptoms. (Tr. at 241, 244.) Dr. Lewis prescribed Glucotrol XL. (Id.)

On August 3, 2009, Claimant presented to Cabin Creek Health Systems to establish a new patient relationship, following her move from Florida to West Virginia. (Tr. at 320-21, 360-61.) Claimant reported that she lost her job at Dillards and moved to West Virginia, her husband's home state. (Tr. at 320, 360.) She indicated that her blood sugar levels had been in the 400s and that her blood pressure was high, but that she had been without medications for hypothyroidism, diabetes, and hypertension for eight months. (Id.) She admitted however, that her blood pressure and blood sugar levels were well-controlled with medication. (Id.) Claimant denied fatigue,

anxiety, depression, or chest pain. (Id.) Dr. Sue A. Westfall noted on examination that Claimant was obese and had enlarged lymph nodes. (Id.) She prescribed Lisinopril for hypertension, Synthroid for hypothyroidism, Janumet for diabetes, and Amoxicillin for a sinus infection. (Tr. at 321, 361.)

On September 14, 2009, Claimant reported that she felt well, was compliant with the medication regimen, and that she had increased reflux due to the added stress of her husband having been ill. (Tr. at 318, 364.) Claimant again denied fatigue, anxiety, depression, or chest pain, and Nurse Practitioner Donna M. Burton, noted a normal general physical exam and prescribed Nexium for GERD and Gilpizide for diabetes. (Tr. at 319, 363.)

At a routine follow-up examination on December 7, 2009, Claimant reported that her blood pressure and blood sugar levels were well when checked at home, that she was complaint with her medications, and that she had followed a low fat diet. (Tr. at 316, 367.) Claimant again denied fatigue, anxiety, depression, or chest pain, and general physical exam was normal. (Id.) Ms. Burton continued her medications. (Tr. at 317, 368.)

Claimant returned for follow-up exam on March 1, 2010, and reported that overall, she felt well and was compliant with medications, but had an increased dry cough with wheezing, due to what she thought was weather changes from Florida to West Virginia. (Tr. at 313, 372.) Claimant again denied fatigue, anxiety, depression, or chest pain. (Id.) Except for bilateral diminished breaths sounds, physical examination was normal. (Tr. at 314, 371.) Ms. Burton assessed benign essential hypertension, GERD, hypothyroidism, obesity, diabetes controlled, acute bronchitis, and sinusitis. (Id.) She prescribed an Albuterol inhaler and continued her other medications. (Tr. at 314-15, 370-72.)

On May 24, 2010, Ms. Burton noted that Claimant's GERD was stable on Nexium, that

her asthma was stable on Singulair and an inhaler, that her blood sugars ranged between 150 and 250 at home with medication, and that her blood pressure ranged between 130-150/70-80 at home. (Tr. at 311-12, 373-74.) Claimant again denied fatigue, anxiety, depression, or chest pain. (Tr. at 311, 374.) Physical examination was normal except for some ear issues. (Tr. at 312, 373.) Ms. Burton continued Claimant's medications and prescribed Augmentin. (Id.)

At a follow-up examination on July 2, 2010, Claimant reported that her blood sugars at home ranged between 135 and 220, that she was watching her diet and walked two miles a day, and denied fatigue, anxiety, depression, or chest pain. (Tr. at 309, 377.) Physical exam was normal, with a 132/80 blood pressure reading, and Ms. Burton noted that her GERD was stable on Nexium and continued her medications. (Tr. at 309-10, 376-77.) On September 24, 2010, Claimant reported that she was moving to Delaware in mid-October, where her husband had family and she had a job offer. (Tr. at 307, 380, 461.) Her blood pressure at home was 130-50/80 at home and blood sugars were 200 to 270 at home. (Id.) Physical exam essentially was normal, her GERD and asthma were stable on medications, and Ms. Burton continued her medications. (Tr. at 308, 379, 462.)

Claimant returned to Cabin Creek Health Systems five months later, on February 24, 2011. (Tr. at 304, 458.) She reported that her blood pressure was elevated when stressed, that she had been watching her diet, that her blood sugar levels ranged between 400 and 500, and that she had been without medications for at least one month. (Tr. at 305, 459.) Ms. Burton prescribed Lantis for diabetes and Simvastatin for high cholesterol, and continued her medications. (Id.) On April 1, 2011, Claimant complained of left lower abdominal pain with a two year history. (Tr. at 302, 456.) She stated that the pain radiated to her back with increased pressure in her lower abdomen. (Id.) Claimant again denied fatigue, anxiety, depression, or chest pain, and general physical exam was normal and her blood pressure was 160/92. (Id.) Physical examination revealed abdominal

tenderness. (Id.) Ms. Burton prescribed hydrochlorothiazide. (Tr. at 303, 457.) On April 7, 2011, Claimant presented for her annual check-up and reported increased pain and pressure in her left lower abdomen. (Tr. at 299, 453.) Claimant again denied fatigue, anxiety, depression, or chest pain, and general physical exam was normal. (Tr. at 300, 454.) With the exception of left abdominal tenderness, her physical exam was normal and her blood pressure was 122/68. (Tr. at 299-300, 453-54.)

On June 3, 2011, Claimant presented for a three-month follow-up exam and Ms. Burton noted normal findings on a general physical exam. (Tr. at 296-98, 450-52.) Her blood pressure was 130/78 and Ms. Burton continued her medications. (Id.) On August 26, 2011, Claimant's blood pressure was 132/82 and 130/73, and Ms. Burton again noted normal physical examination findings. (Tr. at 292-93, 446-47.) On October 7, 2011, Claimant presented follow-up, with blood pressure readings of 146/90 and 136/82. (Tr. at 289, 443.) Claimant again denied fatigue, anxiety, depression, or chest pain, and general physical exam was normal. (Tr. at 290, 444.) Ms. Burton continued her medications. (Id.) On December 2, 2009, Claimant's blood pressure reading was 140/90, and Ms. Burton noted normal physical examination findings. (Tr. at 287, 441.) On December 29, 2011, Claimant presented with a blood pressure of 134/88, and normal physical exam findings except for left pelvic tenderness, but her pelvic exam was normal. (Tr. at 286, 439-40.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to perform the analysis required by 20 C.F.R. § 404.1521a(3), in assessing her mental impairments. (Document No. 11 at 10-14.) Despite having indicated mental health symptoms on the forms Claimant completed following the filing of her application, she asserts that

no one, including the ALJ, ever addressed her mental impairments. (Id. at 11.) Claimant cites to a Function Report from April 20, 2012, on which she reported several symptoms of mental health issues. (Id. at 11-12.) She further cites specific portions of her testimony wherein she indicated that she left employment due to the inability to withstand responsibility and mental pressure of the job, left another job because she was unable to learn how to use the computer, and that she had memory problems. (Id. at 12-13.) Her husband also testified as to memory deficiencies. (Id. at 13.) Despite these symptoms, Claimant asserts that the ALJ failed to follow the special technique to evaluate her depression and anxiety. (Id.) Furthermore, after determining that her mental impairments were not a severe impairment, the ALJ failed to address her symptoms at the latter steps of the sequential analysis. (Id.) Claimant further asserts that the ALJ's error is not harmless because he failed to perform any assessment of Claimant's mental limitations in daily activities, social functioning, concentration, persistence, or pace. (Id. at 14.)

In response, the Commissioner asserts that prior to Claimant's date last insured, Claimant consistently had normal mental status examinations without any evidence of difficulty concentrating. (Document No. 12 at 10.) The Commissioner contends that Claimant's argument primarily rests upon her uncorroborated testimony. (Id.) Claimant asserts in reply that the Commissioner misunderstood her argument to have been devoted to "making a case for a mental impairment," when in actuality she considers the case as involving a substantive legal error based on the ALJ's failure to rate the degree of limitation resulting from Claimant's mental impairment. (Document No. 13 at 1.) Claimant reiterates that the ALJ's failure was not harmless error because he failed to address Claimant's allegations of mental health symptoms in their entirety. (Id. at 2.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing her credibility and basing his finding entirely upon

the objective medical evidence. (Document No. 11 at 14-17.) Specifically, she asserts that the ALJ failed to address properly the factors set forth in the Regulations, as well as hers and her husband's testimony of significant limitations created by pain, shortness of breath, fatigue, and memory problems, in assessing her credibility. (Id. at 15-16.)

In response, the Commissioner asserts that the ALJ complied with the appropriate regulations for evaluating the intensity and persistence of Claimant's subjective complaints and that the ALJ's decision is supported by substantial evidence. (Document No. 12 at 10-12.) The ALJ acknowledged Claimant's complaints, but determined that the treatment records failed to corroborate her complaints prior to the date last insured. (Id. at 11.) The Commissioner notes that examination records indicated that she denied fatigue, failed to report difficulty concentrating, and denied abdominal pain. (Id.) The ALJ noted that Claimant experienced shortness of breath, but determined that her symptoms were controlled with medication. (Id.) Nevertheless, the ALJ accommodated Claimant's testimony that her asthma was aggravated by humidity and extreme cold by limiting her to certain environmental irritants. (Id.) Furthermore, the ALJ found that Claimant's level of activity was inconsistent with her alleged disabling symptoms. (Id. at 12.) Accordingly, the Commissioner contends that the ALJ's decision is supported by the substantial evidence. (Id.)

Claimant asserts in reply that the Commissioner provided "a great deal of *post hoc* rationale in support of the ALJ's credibility determination." (Document No. 13 at 2.) Claimant contends however, that the Commissioner's "belatedly supplied rationale does not cure the ALJ's failure in this regard." (Id.) She reiterates that the ALJ improperly relied on an absence of objective proof of her subjective symptoms to discredit her testimony and failed to address the factors set forth in the regulations. (Id. at 3.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to evaluate all aspects of Claimant's past relevant work and compare it to the RFC he assessed. (Document No. 11 at 17-19.) Specifically, Claimant asserts that the ALJ failed to follow SSR 82-61 and 82-62 in determining whether she was capable of performing her past relevant work. (Id. at 17.) Although the ALJ stated that he compared Claimant's RFC with the physical and mental demands of her past relevant work, Claimant asserts that he neither considered the mental demands of the work at all, nor obtained testimony from a vocational expert to support his finding. (Id. at 19.) Claimant therefore contends that this matter must be remanded for the taking of additional evidence and a proper analysis at step four of the sequential evaluation. (Id.)

In response, the Commissioner asserts that the substantial evidence of record supports the ALJ's finding that Claimant could return to her former work as a department manager. (Document No. 12 at 8-10.) The Commissioner notes that Claimant's asthma was stable on medication, that her blood pressure and blood sugar were well-controlled when she took medication, and that she experienced no diabetic neuropathy. (Id. at 9-10.) In reply, Claimant asserts that the Commissioner failed to address her argument, and therefore, concedes "that the ALJ's evaluation of [her] past relevant work was inadequate under the Commissioner's applicable rulings." (Document No. 13 at 3.)

Analysis.

1. Severe Mental Impairments.

Claimant first alleges that the ALJ erred in failing to follow the special technique in determining whether her depression and anxiety were severe impairments. (Document No. 11 at 10-14.) To be deemed disabled, a claimant must have an impairment or combination of

impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2014). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."); SSR 96-3p (An impairment "is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§

404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth

(episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). [2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In his decision, the ALJ found that the medical record failed to contain any clinical findings to corroborate an anxiety disorder prior to Claimant's date last insured, and therefore, concluded that it was not a medically determinable impairment. (Tr. at 16.) Contrary to Claimant's allegations, the ALJ was not required to rate the degree of mental functional limitation if he found that Claimant failed to establish a medically determinable impairment. Claimant failed to produce any medical evidence of a mental impairment, and she consistently denied any complaints of fatigue, anxiety, or depression. Furthermore, the medical evidence failed to establish any significant medication side effects. The undersigned also notes that Claimant did not allege a mental impairment as a disabling condition when she filed her Application for benefits. Although Claimant cites to her statements set forth in a Function Report, the undersigned notes that the Report was dated April 20, 2012, which was after the expiration of her date last insured. She indicated that some of her symptoms began four to six months prior, which may have placed her toward the end of the relevant period of time, but did not establish significant limitations and failed to establish that the symptoms and limitations persisted for at least one year. The ALJ did not make any findings as to Claimant's alleged depression, but the undersigned finds that the evidence of record failed to establish such a medically determinable impairment. Accordingly, the undersigned finds that the ALJ's decision that Claimant did not have a severe mental impairment is supported by the substantial evidence of record.

2. Credibility Assessment.

Claimant also alleges that the ALJ erred in assessing her credibility and basing his finding

15

entirely upon the objective medical evidence. (Document No. 11 at 14-17.) A two-step process is used to evaluate a claimant's statements and to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.   20 C.F.R. §§ 404.1529(b) and 416.929(b) (2014); SSR 96-7p; <u>See also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).   If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.   <u>Craig</u>, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations reasonably are consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2014). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.   . . .   Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

16

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2014).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe"

17

impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in her decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In Hines v. Barnhart, the Fourth Circuit stated that

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d 559, 565 n.3 (citing Craig, 76 F.3d at 595).

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 17.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 18.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 18-19.) At the second step of the analysis, the ALJ concluded

18

that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 19.) In addressing the factors set forth in the Regulations, the ALJ acknowledged Claimant's allegations that chronic pain and fatigue affected her ability to perform daily activities. (Tr. at 17.) The ALJ also acknowledged Claimant's reports of difficulty standing and lifting and an inability to walk a block, complaints of neuropathy, and reports of having been able to sit for only one hour. (Id.) The ALJ noted that Claimant alleged her diabetes caused trouble with concentration and attention. (Tr. at 17-18.) Despite her complaints, the ALJ found that the medical evidence demonstrated that her conditions essentially were controlled with medications and failed to establish any limitations in lifting, standing, or walking. (Tr. at 18.) Claimant even reported to Ms. Burton that she walked for exercise. (Id.) The ALJ found that the medical record failed to corroborate any allegations of physical limitations or more than occasional complaints of fatigue. (Id.) Treatment records failed to indicate any reports of problems with concentration or attention prior to the date last insured. (Id.) The ALJ also acknowledged that Claimant's conditions were treated and controlled with medications. (Id.) Claimant went for a period of time without medication, which the ALJ found contradicted her allegations of debilitating symptoms and limitations. (Id) Once she resumed her medications, her blood pressure and blood sugar levels decreased. (Id.) Claimant's asthma was stable with medications. (Id.) The ALJ acknowledged Claimant's aggravating factors, which included weather changes, and assessed environmental limitations. (Id.) The ALJ also acknowledged that Claimant's medications could have caused side effects, but that Claimant failed to report any such troubling effects to her medical providers. (Id.) Finally, the ALJ considered the State agency opinions of record, but gave them only limited weight as the ALJ found the record supported lifting and environmental limitations. (Tr. at 19.) Accordingly,

based on the foregoing, the undersigned finds that the ALJ's pain and credibility assessment conformed to the applicable rules and regulations and is supported by the substantial evidence of record.

    3. <u>Past Relevant Work</u>.

       Finally, Claimant alleges that the ALJ failed to evaluate all aspects of Claimant's past relevant work and compare it to the RFC he assessed and failed to follow the dictates of SSR 82-61 and 82-62, in determining whether she was capable of performing her past relevant work. (Document No. 11 at 17-19.) At step four of the sequential analysis, the ALJ must use the RFC assessment to determine whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e) (2014). At step four, the ALJ "will compare [his] residual functional capacity assessment…with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f) (2014). If the claimant can continue to do her past relevant work, then she will be found not to be disabled. <u>Id.</u> Pursuant to SSR 82-61, the ALJ may utilize one of three tests to determine whether or not the claimant retains the capacity to perform her past relevant work: (1) The ALJ may base the determination upon a "broad generic, occupational classification of that  job," (2) The ALJ  may determine whether the claimant can perform job duties peculiar to an individual job as actually performed, or (3) The ALJ may determine whether the claimant can perform job duties as ordinarily required by employers throughout the national economy. Under the first option, the Ruling states that a finding of ability to perform past relevant work "on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." <u>Id.</u> Pursuant to SSR 82-62, in finding that the claimant retains the capacity to perform past relevant work, the ALJ must make the following specific findings of fact:

    1. A finding of fact as to the individual's RFC.

    2. A finding of fact as to the physical and mental demands of the past job/occupation.

    3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

In this case, the ALJ found that Claimant was capable of performing past relevant work as a department manager. (Tr. at 19.) The ALJ further found that in "comparing the [C]laimant's residual functional capacity with the physical and mental demands of this work, …the [C]laimant was able to perform it as actually or generally performed." (Id.) The ALJ further noted that a VE testified that an individual with the same limitations assessed could perform her past relevant work. (Id.) Pursuant to the Regulations and Rulings, the undersigned finds that the ALJ made a specific finding as to Claimant's RFC. (Tr. at 17, Finding No. 5.) Although the ALJ did not state the specific physical and mental demands of Claimant's work, he found that she was capable of performing the work as she actually performed it or generally performed it. The VE testified as to the mental and physical skill level of Claimant's prior work, skilled and medium exertion. (Tr. at 73.) The VE then testified based upon the ALJ's hypothetical, which was incorporated into his RFC assessment, that Claimant could perform her past work as a department manager. (Id.) The VE also testified that such a person could perform other jobs such as a cashier checker, sales attendant, and marker. (Tr. at 74.) Based on the VE's testimony and the ALJ's reference to the VE's testimony in his decision, the undersigned finds that the ALJ's decision that Claimant can perform her past relevant work as a department manager is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: May 27, 2016.

Omar J. Aboulhosn
United States Magistrate Judge